UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TERRENCE HEMBY

                              Plaintiff,

        -v.-
                                                    9:09-CV-582
DR. McGRAW, *et al.*,                               (MAD/ATB)
                              Defendants.

TERRENCE HEMBY, Plaintiff, *pro se*
DEAN J. HIGGINS, Assistant Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

**ORDER and REPORT and RECOMMENDATION**

This matter has been referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In this civil rights amended complaint, plaintiff alleges that he was denied constitutionally adequate dental care by defendants.  He also includes a claim that he has been subject to retaliation for complaining about the quality of his care. (Amended Complaint (AC), Dkt. No. 8).  Plaintiff seeks declaratory and monetary relief. Presently before the court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. Nos. 55, 56).  Plaintiff has submitted a response in opposition to the defendants' motion. (Dkt. No. 57).  Plaintiff has also filed a motion for appointment of counsel. (Dkt. No. 59).  For the following reasons, this court agrees with defendants, will deny the motion for appointment of counsel, and will recommend dismissal of the complaint in its entirety.

# DISCUSSION

## I.   Facts

At all times relevant to this complaint, plaintiff was incarcerated at Eastern Correctional Facility.  In his amended[1] complaint, plaintiff alleges that on November 7, 2007, he had a dental appointment for a routine cleaning. (AC ¶ 10).  Plaintiff claims that during that appointment, he was told that he had numerous cavities. *Id.* Plaintiff states that this information was conveyed to defendant Dental Assistant (DA) Parrino,[2] who told plaintiff that he would be placed on a "call out" to have these cavities filled. *Id.*  Plaintiff alleges that he was never called for the fillings, and on February 19, 2008, he returned to the dentist "on an emergency" because one of the teeth that should have been filled had decayed to the point where it had to be extracted. *Id.*

Plaintiff alleges that this conduct violated the Department of Correctional Services (DOCS)[3] policy, as written by the Director of Dental Services, requiring that inmates receive dental care that meets "the same standards of quality," provided to

---

[1] Plaintiff amended his complaint to replace a "Jane Doe" with a named defendant and to add a new claim of "retaliation." (Dkt. Nos. 1, 8).  The court would note, however, that plaintiff's amended complaint is technically a supplemental complaint because he has added facts that allegedly occurred after the filing of the original complaint. *See* Fed. R. Civ. P. 15(d).  The difference has no effect on this court's recommendation.

[2] "Parrino" is the correct spelling of the defendant that plaintiff has listed as "Perino."  The court will use the proper spelling of this defendant's name.

[3] On April 1, 2011, DOCS and the New York State Division of Parole were merged into one agency, named the New York State Department of Corrections and Community Supervision. Because the events relevant to this suit occurred before the merger, I will refer to New York State's corrections agency as "DOCS."

individuals who are not incarcerated. (AC ¶ 11).

Plaintiff then states that, almost a year later, on January 12, 2009, he went to the dentist "on an emergency." (AC ¶ 12).  Plaintiff states that defendant dentist, Dr. McGraw, filled a tooth in the "front of Plaintiff's mouth." *Id.*  Plaintiff claims that two days later, on January 14, 2009, he had to return to the dentist to have the same tooth extracted.  Plaintiff alleges that defendant dentist Dr. Slosarska, who had taken over plaintiff's dental care from Dr. McGraw, extracted the tooth, and plaintiff blames Dr. McGraw for allowing the tooth to decay in violation of "Dental Policy Standards."[4] (AC ¶ 14).  Plaintiff also alleges that on January 14, 2009, Dr. Slosarska told plaintiff that he had three more cavities, and that he could not have "the plate" that he needed for the missing teeth until these three cavities were filled. (AC ¶ 15).

On January 22, 2009, plaintiff states that he was called back to the dental department for follow-up and treatment of a "dry socket" from the January 14th extraction of his front tooth. (AC ¶ 16).  Plaintiff claims that he asked how long it was going to take to get the required dental work done so that the "plate" for his missing teeth could be made.  Plaintiff states that he was told that his "follow-up" would be done in two weeks, and that he was told by defendant Dental Assistant DeJesus that "all the work would be completed in four weeks."  Plaintiff claims that after sixty days, the work on his teeth still had not been completed, again in violation of the

---

[4] Exhibit A of plaintiff's complaint is a copy of the DOCS Division of Health Services Policy. Dental Program, No. 2.0, developed by Robert F. McCardle, D.D.S., Director of Dental Services. (Dkt. No. 8 at 8-36) (Pages are as numbered by the court's electronic case management system, CM/ECF).

dental policy. (AC ¶¶ 16-17).  Plaintiff claims that he filed "numerous grievances" and exhausted his administrative remedies with regard to his dental care.

Defendants deposed plaintiff on July 2, 2010 and have included a copy of the deposition as an exhibit to their summary judgment motion. (Pl.'s Dep., Dkt. No. 55-6).  Each defendant has submitted a declaration in support of the motion for summary judgment, and they have included as exhibits, plaintiff's relevant dental as well as medical records. (Dkt. Nos. 55-3, McGraw Decl. & Exs. A & B; 55-7, Slosarska Decl.; 55-8, Parrino Decl.; and 55-9, DeJesus Decl.).  Plaintiff's medical records have been filed as Exhibit C in a separate docket entry. (Dkt. No. 56).  Defendant dentists McGraw and Slosarska argue that plaintiff received a substantial amount of dental care while at Eastern, and that the care plaintiff received was at all times, constitutionally adequate and in compliance with DOCS policies.  Defendant dental assistants argue that neither of them were personally involved with plaintiff's dental care, and that providing dental care is beyond the scope of their respective practices because dental assistants are only allowed to perform routine cleaning, sanitizing of instruments, and maintaining appointment schedules.

## II.   <u>Appointment of Counsel</u>

On October 26, 2011, plaintiff filed his fourth motion for appointment of counsel. (Dkt. No. 59).  This court denied plaintiff's third motion for appointment of counsel on June 22, 2010. (Dkt. No. 39).  In his third motion for counsel, plaintiff alleged "material changed circumstances," warranting appointment of counsel in his case. (Dkt. No. 38).  I reviewed plaintiff's allegations as well as the previous motions

4

and found that appointment of counsel was not warranted. (Dkt. No. 39). In his current motion, plaintiff states that his case involves complex matters that would require "significant research and investigation." (Dkt. No. 59 at 1). This court has already determined that plaintiff's claims are not overly complex, and that the Mandatory Pretrial Discovery and Scheduling Order required defendant to turn over relevant discovery. (Dkt. No. 39 at 2 n.1). Thus, plaintiff would not have needed counsel to engage in discovery, which should now be completed.[5]

Based on this court's prior orders denying counsel, and after a review of the current motion, this court finds that plaintiff's circumstances have not materially changed. Thus, the court will again deny plaintiff's motion for appointment of counsel. Additionally, based upon defendant's motion for summary judgment, this court agrees that the case should be dismissed. That analysis is discussed below.

## III.   Summary Judgment-Legal Standards

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272-73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party

---

[5] The court also notes that this case was referred for mediation through the Pro Se Prisoner Settlement Program, and was mediated by Magistrate Judge Victor Bianchini. (Dkt. No. 44). The mediation was not successful.

for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir.1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272. "[I]n a pro se case, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (citing, *inter alia*, *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994) (a court is to read a pro se party's "supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest")). "However, a pro se party's "bald assertion," completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir.1991)).

**IV.**   **Medical/Dental Care**

    **A.**   **Legal Standards**

In order to state an Eighth Amendment claim based on constitutionally

inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently

harmful to evidence deliberate indifference to serious medical needs." *Estelle v.*

*Gamble*, 429 U.S. 97, 106 (1976).  There are two elements to the deliberate

indifference standard.  *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003).  The

first element is objective and measures the severity of the deprivation, while the

second element is subjective and ensures that the defendant acted with a sufficiently

culpable state of mind.  *Id.* at 184 (citing inter alia *Chance v. Armstrong*, 143 F.3d

698, 702 (2d Cir. 1998)).

In order to meet the objective requirement, the alleged deprivation of adequate

medical care must be "sufficiently serious." *Salahuddin v. Goord*, 467 F.3d 263, 279

(2d Cir. 2006)(citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Determining

whether a deprivation is sufficiently serious also involves two inquiries. *Id.*  The first

question is whether the plaintiff was actually deprived of adequate medical care. *Id.*

Prison officials who act "reasonably" in response to the inmates health risk will not be

found liable under the Eighth Amendment because the official's duty is only to

provide "reasonable care." *Id.* (citing *Farmer*, 511 U.S. at 844-47).

The second part of the objective test asks whether the purported inadequacy in

the medical care is "sufficiently serious." *Id.* at 280.  The court must examine how the

care was inadequate and what harm the inadequacy caused or will likely cause the

plaintiff.  *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 32-33 (1993)).  If the "unreasonable care" consists of a failure to provide ***any*** treatment, then the court examines whether the inmate's condition itself is "sufficiently serious." *Id.* (citing *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003)).  However, in cases such as this one, where the inadequacy is in the medical treatment that was actually afforded to the inmate, the inquiry is narrower. *Id.*  If the plaintiff is receiving ongoing treatment, and the issue is an unreasonable delay or interruption of the treatment, then the "seriousness" inquiry focuses on the challenged delay itself, rather than on the underlying condition alone. *Id.* (citing *Smith*, 316 F.3d at 185).  Thus, the court in *Salahuddin* made clear that although courts speak of a "serious medical condition" as the basis for an Eighth Amendment claim, the seriousness of the condition is only one factor in determining whether the deprivation of adequate medical care is sufficiently serious to establish constitutional liability.  *Id.* at 280.

The second element is subjective and asks whether the official acted with "a sufficiently culpable state of mind." *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 300 (1991)).  In order to meet the second element, plaintiff must demonstrate more than a "negligent" failure to provide adequate medical care.  *Id.* (citing *Farmer*, 511 U.S. at 835-37).  Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id.*  Deliberate indifference is equivalent to subjective recklessness. *Id.* (citing *Farmer*, 511 U.S. at 839-40).

In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety.  *Id.* (citing

*Chance*, 143 F.3d at 702).  The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  The defendant must be subjectively aware that his or her conduct creates the risk; however, the defendant may introduce proof that he or she knew the underlying facts, but believed that the risk to which the facts gave rise was "insubstantial or non-existent." *Farmer*, 511 U.S. at 844.  Thus, the court stated in *Salahuddin* that the defendant's belief that his conduct posed no risk of serious harm "need not be sound so long as it is sincere," and "even if objectively unreasonable, a defendant's mental state may be nonculpable." *Salahuddin*, 467 F.3d at 281.

Additionally, a plaintiff's disagreement with prescribed treatment does not rise to the level of a constitutional claim. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001).  Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted).  An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986).  The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle*, 429 U.S. at 107).  Even if those medical judgments amount to negligence or malpractice,

9

malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id. See also Daniels v. Williams*, 474 U.S. 327, 332 (1986)(negligence not actionable under Section 1983). Thus, any claims of malpractice, or disagreement with treatment are not actionable under Section 1983.

### B.    Application

#### 1.    Serious Medical/Dental Need

In *Chance v. Armstrong*, 143 F.3d 698, 702-03 (2d Cir. 1998), the Second Circuit specifically held that a cognizable claim regarding dental care, like one alleging deficient medical care, may be based upon various factors, such as pain suffered by plaintiff; deterioration of the condition; or the inability to engage in normal activities. (citations omitted). In this case, plaintiff claims that as a result of defendants' failure to properly treat him for his cavities, plaintiff suffered pain and ultimately had to have various teeth extracted. Plaintiff clearly has dental problems, and this court will assume for purposes of this recommendation, that plaintiff had a serious dental need.

#### 2.    Deliberate Indifference/Personal Involvement

Plaintiff's amended complaint alleges that on November 7, 2007, he had his teeth cleaned, and he was told that he had "numerous" cavities. Plaintiff claims that defendant dental assistant, Parrino told plaintiff that he would be placed on a "call-out" in order to get the cavities filled, but he was never called. He states that he went back to the dental department himself on an "emergency" basis on February 19, 2008. (AC ¶ 10). Plaintiff claims that, by not placing him on a call-out for services,

10

defendants acted with deliberate indifference to his serious dental needs and allowed plaintiff's condition to deteriorate.

A review of the dental records shows that plaintiff was treated in the dental department on August 3, 2007 and on September 19, 2007.  On September 19, 2007, plaintiff's # 18[6] tooth was extracted by S. Misdaq Hussan, DDS, who is not a defendant in this action. (McGraw Decl. Ex. B at 2).[7]  Plaintiff was also examined by Dr. Hussan on October 10, 2007 for a problem with plaintiff's # 10 tooth. (*Id.*) Although plaintiff claims that his teeth were cleaned on November 7, 2007, the documents show that plaintiff's teeth were cleaned on November 27, 2007. (*Id.*)  The note from that date states "cavitron, scale, polish (8D + 10D) all 4 quadrants." (*Id.*) Although the signature of the dental assistant who signed the note is not very legible, it is clearly neither of the defendant dental assistants in this action.  Plaintiff seems to claim that all of his problems started because defendant Parrino, who does not appear to have been involved in the November 27th cleaning, did not make a follow up appointment for him.  However, none of the named defendants[8] were involved in this particular incident, nor were any of them involved on February 19, 2008 when plaintiff went to "emergency sick call" complaining of pain in tooth # 10. (*Id.*)  On

---

[6] Defendants have submitted an exhibit explaining the "Dental Numbering System," together with a diagram of the mouth, with all the teeth numbered. (Dkt. No. 55-5, Defs.' Ex. D).

[7] Although the pages of the Exhibit are numbered at the bottom, the numbers begin with "10," and the court will refer to the pages of the exhibit as assigned by the court's electronic filing system (CM/ECF).

[8] The named defendants are dentists McGraw and Slosarska and dental assistants Parrino and DeJesus.

February 19, 2008, neither of the named defendant dentists were treating plaintiff.

A defendant cannot be deliberately indifferent to plaintiff's serious dental needs if he or she is not involved in plaintiff's care.  Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability for any constitutional claim.  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  In *Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction.  *Id.*  The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong.  *Id.*  Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue.  *Id.*  Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event.  *Id.  See Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937 (2009) (stating that defendant could be liable under section 1983 if he failed to remedy constitutional violation after learning of it or was grossly negligent in managing subordinates who caused violation); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).

12

None of the named defendants were involved in plaintiff's care in 2007. Defendants Parrino and DeJesus were not personally involved with plaintiff's care, are clearly not supervisors, and had no authority to dictate a plan for plaintiff's dental care.[9] (Parrino Decl. ¶¶ 2-3; DeJesus Decl. ¶ 2-3).  Defendant DeJesus points out that the only time that she is mentioned in the amended complaint is when she allegedly told plaintiff that his treatment would be completed in a certain time. (DeJesus Decl. ¶ 5).  Such a statement, when the defendant was not responsible for any subsequent treatment, does not rise to the level of deliberate indifference.[10]

Dr. McGraw did not begin working at Eastern until April of 2008, and Dr. Slosarska did not begin working at Eastern until December of 2008. (McGraw Decl. ¶ 4; Slosarska Decl. ¶ 7).  Thus, neither of the dentist defendants were involved in the alleged initial delay in plaintiff's care.  The records show that Dr. Allan Jacobsen, DDS examined plaintiff on February 19, 2008, noting his complaints of pain in tooth #

---

[9] Subordinate medical personnel who lack authority to direct the primary doctor with respect to treatment decisions are not responsible or liable for such treatment decisions or, at a minimum, are entitled to qualified immunity. *See, e.g., Smith v. Woods*, 9:05-CV-1439 (LEK/DEP), 2008 WL 788573 at *9 & n.7 (N.D.N.Y. Mar. 20, 2008) (social worker and psychologist in prison had no authority to override the decision of the treating psychiatrist regarding appropriate medication for an inmate/patient and could not be liable for deliberate indifference with respect to that decision). *See also Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2d Cir. 2000) (the failure of a medical professional at a prison to intercede in the treatment of an inmate by his superiors is objectively reasonable and entitles them to qualified immunity, because they lack the authority to intervene in medical decisions).

[10] The court would point out that plaintiff complained at one point about not receiving x-rays, and defendant DeJesus states in her declaration that due to her medical condition, she "generally [does] not take dental x-rays of inmates at ECF." (DeJesus Decl. ¶ 4).  Thus, she could not have been responsible for any failure to take x-rays of plaintiff's teeth.

10.[11] (Defs.' Ex. B at 2).  It appears that Dr. Jacobsen noted that the tooth was "non restorable," gave plaintiff a prescription, and planned to extract tooth # 10. (*Id.*)

The next entry is March 17, 2008, again made by Dr. Jacobsen, who stated that plaintiff decided to stop taking his medication. (*Id.*)  Dr. Jacobsen explained that "failure to take Rx may make [plaintiff] jump + have me stuck with dirty instrument." (*Id.*)  Plaintiff got out of the chair and left the clinic.  It appears that a "refusal" was signed for the extraction of tooth # 10. (*Id.*)  The next note indicates that, later the same evening, plaintiff complained to the area sergeant about his tooth and stated that he did wish to have the extraction. (*Id.* at 3).  Plaintiff then signed the surgical consent, but apparently refused[12] to have sutures.  Dr. Jacobsen placed gauze in plaintiff's mouth without suturing the area of the extraction. (*Id.* at 4).  Thus, none of the named defendants are responsible for any delays in care that plaintiff alleges in the beginning of the amended complaint.

Dr. McGraw started treating plaintiff on June 25, 2008, when he examined plaintiff for problems with teeth ## 6 and 8. (*Id.*)  In his declaration, Dr. McGraw states that he provided fillings for those teeth on that date. (*Id.* & McGraw Decl. ¶ 13).

---

[11] Dr. Jacobsen is not a defendant in this case.

[12] During his deposition, plaintiff admitted that he refused to have sutures put in because the dentist "didn't have the type of sutures I wanted, and I refused to have them put old sutures." (Pl. Dep. at 17).  As stated above, plaintiff's disagreement with the type or extent of care provided does not rise to the level of a constitutional violation. *Sonds*, 151 F. Supp. 2d at 311.  Thus, even if plaintiff were suing the dentist responsible for the procedure, the court would recommend dismissal of this part of plaintiff's allegations.  Any delay or damage caused by plaintiff's failure to have the appropriate procedure would not be attributable to defendants. *See Alster v. Goord*, 745 F. Supp. 2d 317, 334 (S.D.N.Y. 2010) (refusal of care effectively rebuts deliberate indifference).

Dr. McGraw noted the decay in tooth # 8 and informed plaintiff that the "prognosis [for that tooth was] questionable." (*Id.* & McGraw Decl. ¶ 14)  The dental records next show that plaintiff did not attend his next two appointments, one dated September 17, 2008 and the next, dated September 18, 2008.  The records indicate that plaintiff was a "No Show," however, the second entry also states that the "PM callout [was] not printed" and that plaintiff was "unable to get down." (*Id.*)  On December 4, 2008, plaintiff again saw Dr. McGraw, who took care of tooth # 32.  Defendant McGraw states that he last saw the plaintiff on January 12, 2009, at which time, he filled tooth # 9. (*Id.* & McGraw Decl. ¶ 17).

Defendant Slosarska saw plaintiff two days later on January 14, 2009, at which time she extracted tooth # 8. (Defs.' Ex. B at 4 & Slosarska Decl. ¶ 9).  Although plaintiff claims that Dr. Slosarska extracted the same tooth that Dr. McGraw filled two days earlier, the dental records do not support this claim.  Plaintiff seems to want to allege that defendant McGraw was deliberately indifferent because he filled a tooth that he knew would have to be extracted shortly thereafter.  This simply is not the case, and there are absolutely no facts showing that defendant McGraw was deliberately indifferent to plaintiff's serious dental needs during the time that he cared for plaintiff's teeth.  In fact, tooth # 8, which Dr. McGraw filled, but said was "questionable" in June of 2008, was not extracted until January 14, 2009. (McGraw Decl. ¶ 14 & Defs.' Ex. B at 4; Slosarska Decl. ¶ 11).

Dr. Slosarska then treated plaintiff for a "dry socket" on January 21, 2009 and checked him on January 22, 2009. (Defs.' Ex. B at 4; Slosarska Decl. ¶ 17).  On March

18, 2009, Dr. Slosarska filled plaintiff's tooth # 13. (*Id.*; Slosarska Decl. ¶ 19).  Dr. Slosarska also saw plaintiff on February 19, 2009 to treat him for a problem with tooth # 4, and on April 30, 2009, she filled tooth # 2. (*Id.*; Slosarska Decl. ¶¶ 18, 20).  The dental records show that on June 2, 2009, plaintiff did not appear for his appointment, but on June 4, 2009, defendant Slosarska treated plaintiff by adjusting his bite with respect to the work done on plaintiff's tooth # 2. (*Id.*; Slosarska Decl. ¶¶ 21-22). Plaintiff did not appear for his appointment on June 12, 2009. (*Id.*; Slosarska Decl. ¶ 23).  The records indicate that he did not appear because he was in the Special Housing Unit. (*Id.*)  Plaintiff was transferred to another facility in July of 2009.  Dr. Slosarska states that she does not recall discussing a proposed "plate" for plaintiff, but she states that no such plate would be contemplated or provided until other dental procedures were completed. (Slosarska Decl. ¶ 27).

The records show that plaintiff was treated extensively while he was at Eastern Correctional Facility.  As stated above, there is no indication that any of the defendants were involved with plaintiff's care until Dr. McGraw began seeing plaintiff in June of 2008, thus, any alleged delay[13] prior to that time cannot be held against these defendants due to the lack of personal involvement.  Once the defendant dentists did start treating plaintiff, the records show that he was seen often for dental care, both for extractions as well as other dental complaints.  Thus, assuming that plaintiff had a serious medical need, there is no evidence that the defendant dentists were deliberately

---

[13] This court does not find that there was any delay, but merely states that even if there had been a delay in plaintiff's treatment, it was not attributable to any of the named defendants.

indifferent to that need. *See, e.g., Estelle v. Gamble*, 429 U.S. at 107 (considering the extensive scope of medical care provided to inmate plaintiff in determining that his claim that "more should have been done by way of diagnosis and treatment" may have indicated medical malpractice, but failed to state an Eighth Amendment cause of action).

With respect to the dental assistant defendants, they were not, nor could they have been, responsible for any of the particular treatment about which plaintiff complains. Plaintiff's conclusory assertion that these dental assistants somehow failed to schedule him for appointments is simply inconsistent with the medical records.[14] Plaintiff's assertion that he filed numerous grievances is belied by the documentary evidence showing that he filed only one grievance complaining about his dental care, and did not file that grievance until March of 2009. In his response to the motion for summary judgment, plaintiff asserts that both defendants Parrino and DeJesus "were working" in 2007, when he was allegedly told that he had cavities, but no follow up appointments were scheduled. This conclusory statement that defendants Parrino and DeJesus were somehow involved in delaying plaintiff's care because they were both "working," is simply untenable.

---

[14] *See, e.g.*, *Benitez v. Pecenco*, 92 Civ. 7670, 1995 WL 444352 at n.5, (S.D.N.Y. July 27, 1995) (conclusory claim that plaintiff was never issued medication was directly contradicted by medical records and was insufficient to create a factual dispute on that issue) *(citing Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) ("mere conclusory allegations or denials are insufficient to withstand a motion for summary judgment once the moving party has set forth a documentary case")); *Brown v. White*, 9:08-CV-200, 2010 WL 985184, at *8 (N.D.N.Y. Mar. 15, 2010) (plaintiff's conclusory suggestion that defendant nurse completely refused to provide any medical attention on a particular date is insufficient to create a dispute of fact in the face of the sworn declaration and supporting documentary evidence in the record).

Plaintiff's disagreement with the speed or quality of his dental care does not rise to the level of a constitutional violation.  He continues to state that the defendants violated DOCS policy providing that inmates should get care that is as good as if they were free citizens.  Even if there had been violations of state directives or state policies, that is generally insufficient to support a constitutional claim. *See e.g.* *Salahuddin*, 781 F.2d at 27 n.4 (every violation of state law is not a constitutional deprivation); *Jones v. Schriro*, No. 10 Civ. 5352, 2010 WL 2038783, at *2 (S.D.N.Y. Mar. 30, 2011) (violations of Board of Corrections Minimum Standards or lack of compliance with State requirements for correctional facilities is not *per se* unconstitutional) (citation omitted), *adopted* 2011 WL 2038968 (S.D.N.Y. May 28, 2011).  As stated above, even conduct amounting to malpractice would be insufficient to state a constitutional claim.

In his response to defendants' motion for summary judgment, plaintiff claims that Dr. McGraw "passed" plaintiff to Dr. Slosarska because of plaintiff's "medical condition." (Dkt. No. 57-1).  During his deposition, while complaining about being sent to a different dentist, plaintiff stated that "basically in my opinion [Dr. McGraw ] didn't want to do my teeth." (Pl.'s Dep. at 36).  He then stated that "obviously, someone, in my opinion, was trying not to see me." (*Id*.)  Plaintiff complained the "no show" entries were not true, and that these entries were the "excuse" not to examine plaintiff. (*Id*. at 35-36).  Plaintiff then referred to his medical records and stated that "in [his] opinion, that was the reason for the delay in care, although neither defendant McGraw, nor defendant Slosarska ever said that to plaintiff. (*Id.* at 42).  Plaintiff based

18

this opinion on the fact that Dr. McGraw put on two "extra" pair of surgical gloves, and he had never seen that before, which led plaintiff to believe that Dr. McGraw did not want to "handle" him. (*Id.*)  With respect to Dr. Slosarska, plaintiff said he "didn't really feel that towards her." (*Id.*)  However, plaintiff believed that "once one of your colleagues act [sic] funny towards you and pass [sic] you off to another one, it is [sic] already been a seed planted in their mind also." (*Id.* at 43).

Without elaborating on what medical condition plaintiff has, these statements are completely unsupported, given the amount of dental care that he was, in fact, afforded.[15]  The fact that Dr. McGraw may have been cautious about treating plaintiff is no evidence that he was failing to treat him because of his "medical condition(s)." Additionally, even if Dr. McGraw "passed" plaintiff off to another dentist, this is not the basis for a claim of deliberate indifference.  In her affidavit, Dr. Slosarska confirms that although she treated plaintiff on "a number of occasions" in 2009, and she did "follow" plaintiff on matters that she had begun, she was not his only dentist. Inmates "could be seen by other dentists depending on schedules and need." (Slosarska Decl. ¶¶ 13-14).  The fact that plaintiff was seen by multiple dentists certainly does, in itself, rise to the level of a deliberate indifference claim.  Thus, plaintiff's claims of deliberate indifference may be dismissed.

---

[15] The court notes that the only statement that might be interpreted as referencing plaintiff's "medical history" was made by Dr. Jacobsen, in 2008.  Dr. Jacobsen is not a defendant in this case, and was concerned about plaintiff's decision to stop taking prescribed medication prior to an extraction. (Defs.' Ex. B at 2). Plaintiff was not refused any care because of his "medical condition."

V.    **Retaliation**

In his amended complaint, plaintiff has added a claim that defendants retaliated against plaintiff for filing his "numerous grievances."

A.    **Legal Standards**

Any action taken by defendants in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself, states a viable constitutional claim. *Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988). In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)). Grievances or complaints to the Inspector General ("IG") are considered constitutionally protected actions. *See Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (grievances); *Smith v. Maypes-Rhynders*, No. 07 Civ. 11241, at *4 (S.D.N.Y. March 31, 2009) (complaints to IG or filing internal grievances); *Crenshaw v. Herbert*, 445 F. Supp. 2d 301, 303 (W.D.N.Y. 2006) (filing lawsuits or grievances are constitutionally protected activities).

The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiffs must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)). Finally, even if plaintiff makes the appropriate

20

showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *Bennett*, 343 F.3d at 137.

**B.    Application**

In his response to defendants' motion for summary judgment, plaintiff claims that defendants started writing "no show" after plaintiff filed grievances asking to be given appropriate dental care. (Dkt. No. 57 at 2, ¶ 12).  Although plaintiff states he filed numerous grievances, there is only one grievance that has been submitted in this case, and it was filed by plaintiff on March 13, 2009. (Defs.' Ex. A, Grievance Documents with Appeals).  Only one "no show" notation is made after plaintiff filed his grievance, and the notation was not written until June 12, 2009, three months after plaintiff filed his grievance and after he was seen by the dental department for various procedures in January, February, March and April of 2009.(*Id.*) Plaintiff's claim of retaliation is completely conclusory and unsupported by any evidence.  Plaintiff has not submitted any grievances that he wrote at any other time.

Thus, plaintiff's claims of retaliation may be dismissed.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's fourth motion for appointment of counsel, (Dkt. No. 59), is **DENIED**, and it is

**RECOMMENDED**, that defendants' motion for summary judgment (Dkt. No. 55) be **GRANTED**, and the complaint **DISMISSED IN ITS ENTIRETY**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen

(14) days within which to file written objections to the foregoing report.

Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: December 19, 2011

Hon. Andrew T. Baxter
U.S. Magistrate Judge