**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TERRENCE HEMBY,**

                        **Plaintiff,**

    vs.                                              **9:09-cv-582**
                                                          **(MAD/ATB)**

**DR. McGRAW, Dentist, Eastern Correctional**
**Facility; SLOSARSKA, Dentist, Eastern**
**Correctional Facility; PERINO, Dental Assistant,**
**Eastern Correctional Facility; and DeJESUS,**
**Dental Assistant, Eastern Correctional Facility,**

                        **Defendants.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**TERRENCE HEMBY**
**01-A-1300**
Clinton Correctional Facility
PO Box 2002
Dannemora, New York 12929
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**          **DEAN J. HIGGINS, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Currently before the Court are Plaintiff's objections to Magistrate Judge Baxter's December 19, 2011 Order and Report and Recommendation.

## II. BACKGROUND[1]

At all times relevant to the complaint, Plaintiff was incarcerated at Eastern Correctional Facility. In his amended complaint, Plaintiff alleges that, on November 7, 2007, he had a dental appointment for a routine cleaning. *See* Dkt. No. 8 at ¶ 10. Plaintiff claims that, during that appointment, he was told that he had numerous cavities. *See id.* This information was conveyed to Defendant Parrino who told Plaintiff that he would be placed on a "call out" to have these cavities filled. *See id.* Plaintiff alleges that he was never called for the fillings and, on February 19, 2008, he returned to the dentist "on an emergency" because the teeth that should have been filled had decayed to the point where they had to be extracted. *See id.*

Plaintiff claims that this conduct violated the Department of Correctional Services ("DOCS")[2] policy, as written by the Director of Dental Services, requiring that inmates receive dental care that meets "the same standards of quality" provided to individuals who are not incarcerated. *See id.* at ¶ 11.

Almost a year later, on January 12, 2009, Plaintiff went to the dentist "on an emergency." *See id.* at ¶ 12. Plaintiff claims that Defendant McGraw filled a tooth in the "front of Plaintiff's mouth." *See id.* Plaintiff alleges that, two-days later, on January 14, 2009, he had to return to the dentist to have the same tooth extracted. Plaintiff alleges that Defendant Slosarska, who had taken over Plaintiff's dental care from Defendant McGraw, extracted the tooth, and Plaintiff

---

[1] Since Plaintiff did not object to Magistrate Judge Baxter's factual recitation, unless otherwise noted, the Court has adopted the facts set forth in the December 19, 2011 Order and Report and Recommendation.

[2] On April 1, 2011, DOCS and the New York State Division of Parole were merged into one agency, named the New York State Department of Corrections and Community Supervision. Since the events relevant to this suit occurred before the merger, the Court will refer to New York State's corrections agency as "DOCS."

2

blames Defendant McGraw for allowing the tooth to decay in violation of "Dental Policy Standards."[3] *See id.* at ¶ 14. Also, on January 14, 2009, Plaintiff claims that Defendant Slosarska told him that he had three more cavities, and that he could not have "the plate" that he needed for the missing teeth until these three cavities were filled. *See id.* at ¶ 15.

On January 22, 2009, Plaintiff states that he was called back to the dental department for follow-up treatment of a "dry socket" from the January 14 extraction of his front tooth. *See id.* at ¶ 16. Plaintiff claims that he asked how long it was going to take to get the required dental work done so that the "plate" for his missing teeth could be made. Plaintiff alleges that he was told that his "follow-up" would be done in two weeks, and that Defendant DeJesus told him that "all the work would be completed in four weeks." Plaintiff claims, however, that after sixty days, the work on his teeth still had not been completed, again in violation of DOCS' dental policy. *See id.* at ¶¶ 16-17. Plaintiff claims that he filed "numerous grievances" and exhausted his administrative remedies with regard to his dental care.

In his complaint, Plaintiff alleges that Defendants denied him constitutionally adequate dental care and that he has been subject to retaliation for complaining about the quality of care he received. On April 25, 2011, Defendants' filed a motion for summary judgment. *See* Dkt. No. 55. In support of their motion for summary judgment, Defendants argue that Plaintiff received a substantial amount of dental care while at Eastern, and that the care he received was, at all times, constitutionally adequate and in compliance with DOCS policies. Defendants further argue that Defendants DeJesus and Parrino were not personally involved with Plaintiff's dental care, and that providing dental care is beyond the scope of their respective practices because dental assistants

---

[3] Attached as Exhibit "A" to Plaintiff's amended complaint is a copy of DOCS' Division of Health Services Policy entitled "Dental Services." *See* Dkt. No. 8 at 8-36.

3

are only allowed to perform routine cleaning, sanitize instruments, and maintain appointment schedules.

In his December 19, 2011 Order and Report and Recommendation, Magistrate Judge Baxter recommended that the Court grant Defendants' motion. *See* Dkt. No. 60. Specifically, Magistrate Judge Baxter assumed for purposes of his recommendation that Plaintiff had a serious medical/dental need but further recommended that the Court find that none of the named Defendants were personally involved in Plaintiff's care in 2007. *See id.* at 13. Further, Magistrate Judge Baxter recommended that the Court find that none of the named Defendants were involved with Plaintiff's care until Defendant McGraw began seeing Plaintiff in June of 2008 and, therefore, any alleged delay prior to that time cannot be held against Defendants due to lack of personal involvement. *See id.* at 16. Moreover, Magistrate Judge Baxter recommended that the Court find that, once Defendants did start treating Plaintiff, the records show that he was seen often for dental care and that there is no evidence that Defendants were deliberately indifferent to Plaintiff's dental needs. *See id.* at 16-17 (citation omitted). Thereafter, Magistrate Judge Baxter recommended that the Court find that Defendants Parrino and DeJesus, as dental assistants, were not responsible for Plaintiff's dental care and that Plaintiff's conclusory statements alleging that Defendants Parrino and DeJesus were somehow involved in delaying his care is "simply untenable." *See id.* at 17. Finally, Magistrate Judge Baxter recommended that the Court find "Plaintiff's claim of retaliation is completely conclusory and unsupported by any evidence." *See id.* at 21.

On December 22, 2011, Plaintiff objected to Magistrate Judge Baxter's Order and Report and Recommendation. *See* Dkt. No. 61. Plaintiff claims that he "has shown an overwhelming amount of facts concerning deliberate indifference to his serious medical needs[,]" and that he

4

"has shown the court that all the defendants acted with intent and malice[.]" *See id.* at 1. Plaintiff claims that Defendants' deliberate indifference is shown by the fact that, among other things, "he had to wait close to two years to receive" the "partial plate." *See id.* at 4. Further, Plaintiff alleges that Magistrate Judge Baxter erred in concluding that Defendants DeJesus and Parrino were not involved with Plaintiff's dental care when his teeth were being cleaned. *See id.* at 5. Plaintiff claims that Defendants DeJesus and Parrino were both present when his teeth were cleaned, and that they were "also there to maintain records and to schedule appointments, which was never done in the plaintiff's case." *See id.*

### III. DISCUSSION

**A.    Standard of review**

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43

5

F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "'cannot try issues of fact; it can only determine whether there are issues to be tried.'" *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

In reviewing a *pro se* case, the court "must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). The Second Circuit has opined that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). However, this does not mean that a *pro se* litigant is excused from following the procedural

requirements of summary judgment. *See id.* at 295 (citing *Showers v. Eastmond*, 00 CIV. 3725, 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001)). Specifically, "a *pro se* party's 'bald assertion,' completely unsupported by evidence" is not sufficient to overcome a motion for summary judgment. *Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

**B.     Deliberate Indifference to a Serious Medical/Dental Need**

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. This prohibition includes any "unnecessary and wanton infliction of pain" on those who have been convicted of crimes. *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted). Nevertheless, the United States Supreme Court has recognized that not "every injury" a prisoner suffers "translates into constitutional liability for prison officials." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

In order to establish a claim for unconstitutional denial of medical care, "a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Hathaway*, 37 F.3d at 66 (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976)). This standard requires proof of both an objective and subjective element and this same test applies to cases alleging that a defendant was deliberately indifferent to a plaintiff's serious dental need. *See Bain v. Hsu*, No. 1:06-CV-189, 2010 WL 3927589, *4 (D. Vt. Sept. 29, 2010) (citing cases).

First, the prisoner must demonstrate that his alleged deprivation was of a "sufficiently serious" nature. *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). This can be shown by proving "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir. 1990). Courts have also considered factors such as

7

"(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003) (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Second, a prisoner must show that "the prison official knew of and disregarded his serious medical needs." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). It is not enough to merely disagree over the proper course of treatment. *See Chance*, 143 F.3d at 703. Rather, a prisoner must demonstrate that the prison official acted intentionally, for example, by "intentionally denying or delaying access to medical care or intentionally interfering with . . . treatment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

Having reviewed Plaintiff's claims *de novo*, the Court finds that Magistrate Judge Baxter correctly recommended granting Defendants' motion for summary judgment as to Plaintiff's Eighth Amendment deliberate indifference claims. The record makes clear that Plaintiff received extensive dental treatment while he was incarcerated at Eastern Correctional Facility. *See Estelle*, 429 U.S. at 107 (considering the extensive scope of medical care provided to the inmate plaintiff in determining that his claim that "more should have been done by way of diagnosis and treatment" may have indicated medical malpractice, but failed to state an Eighth Amendment cause of action). Further, as Magistrate Judge Baxter correctly found, there is no indication that any of the named Defendants were involved with Plaintiff's care until June of 2008 and, therefore, any alleged delay prior to that time cannot be held against Defendants due to their lack of personal involvement. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (holding that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983" (internal quotation and citations omitted)).

The record also makes clear that Plaintiff failed to appear for several dental appointments, that he refused sutures after a tooth extraction, and that, at one point, he stopped taking medication prescribed to him for an issue with one of his teeth. *See* Dkt. No. 56-1; Dkt. No. 55-7 at ¶¶ 21-22, 23; Dkt. No. 55-3 at ¶¶ 14, 17. Moreover, Plaintiff appears to disagree with treatment decisions made by Defendants; however, it is not enough to merely disagree over the proper course of treatment. *See Chance*, 143 F.3d at 703. Further, although Plaintiff alleges that Defendants were deliberately indifferent in failing to provide him with a "plate" for two years, Defendant Slosarska states that she does not recall discussing such a proposed treatment with Plaintiff, and that "such a plate would not have been contemplated until the other dental procedures had been completed." *See* Dkt. No. 55-7 at ¶ 27. Again, Plaintiff has failed to establish anything beyond a disagreement over treatment, which fails to meet the deliberate indifference standard.

Finally, as to Defendants Parrino and DeJesus, Magistrate Judge Baxter correctly found that they were not involved with Plaintiff's care, that they are not supervisors, and that they had no authority to dictate a plan for Plaintiff's dental treatment. *See Smith v. Woods*, No. 9:05-CV-1439, 2008 WL 788573, *9 & n.7 (N.D.N.Y. Mar. 20, 2008) (holding that a social worker and psychologist in a prison had no authority to override the decision of the treating psychiatrist regarding appropriate medication for an inmate/patient and could not be liable for deliberate indifference with respect to that decision); *Cuoco v. Moritsugu*, 222 F.3d 99, 111 (2d Cir. 2000) (holding that the failure of a medical professional at a prison to intercede in the treatment of an inmate by his superiors is objectively reasonable and entitled them to qualified immunity because they lack the authority to intervene in medical decisions).

9

Having conducted a *de novo* review of Plaintiff's claims, the Court finds that Magistrate Judge Baxter correctly recommended that the Court should grant Defendants' motion for summary judgment as to Plaintiff's Eight Amendment deliberate indifference claims. The record makes clear that Plaintiff received extensive dental care while at Eastern, and that much of the alleged delay in his treatment was caused by his own conduct, including the refusal of treatment and his failure to attend his dental appointments. *See Alster v. Goord*, 745 F. Supp. 2d 317, 334 (S.D.N.Y. 2010) (holding that refusal of care effectively refutes an Eighth Amendment claim of deliberate indifference).

**C.     Retaliation**

In order to sustain a retaliation claim, "a prisoner must demonstrate the following: '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (quotation omitted).

The Second Circuit has defined "adverse action" in the prison context as "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Id.* at 381 (quotation omitted). This objective test applies even if the plaintiff was not himself subjectively deterred from exercising his rights. *See id.*

The court must keep in mind that claims of retaliation are "easily fabricated" and "pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration." *Bennett*, 343 F.3d at 137 (citation omitted). Accordingly, the plaintiff must set forth non-conclusory allegations. *See id.* Finally, even if the plaintiff makes the appropriate showing,

10

the defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. *See id.*

In his response to Defendants' motion for summary judgment, Plaintiff alleges that Defendants started writing "no show," indicating that he failed to appear for a dental appointment, after he filed grievances requesting that he be given appropriate dental care. *See* Dkt. No. 57 at ¶ 12. Although Plaintiff claims that he filed numerous grievances, there is only one that has been submitted in this case, and it was filed by Plaintiff on March 13, 2009. *See* Dkt. No. 55-4. The record further indicates that only two "no show" notations are made after Plaintiff filed this grievance, and the notations were not written until June 2 and 12, 2009 – three months after Plaintiff filed his grievance and after he was seen by the dental department for a procedure on April 30, 2009. *See id.* at 3; Dkt. No. 56-1 at 4. Further, after the first "no show" on June 2, 2009, Plaintiff was seen for another dental procedure on June 4, 2009. *See* Dkt. No. 56-1 at 4. Finally, the record also makes clear that the June 12, 2009 "no show" was because Plaintiff was placed in the Special Housing Unit ("SHU"). *See id.*

In his objections, Plaintiff fails to provide any additional details regarding this claim and simply argues that Defendants failed to comply with the standard procedures for missing a medical call. *See* Dkt. No. 61 at 2. As Magistrate Judge Baxter correctly found, Plaintiff's retaliation claim is completely conclusory and unsupported by any evidence. The record makes clear that, even after Plaintiff filed his grievance, he continued to receive constant and adequate dental care and, therefore, Plaintiff has failed to establish that Defendants' took any adverse action against him because he engaged in a constitutionally protected activity. Plaintiff's conclusory allegations to the contrary are insufficient to withstand Defendants' motion for summary judgment.

11

Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiff's retaliation claim.

### IV. CONCLUSION

After carefully considering Magistrate Judge Baxter's Order and Report and Recommendation, Plaintiff's objections thereto and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Magistrate Judge Baxter's December 19, 2011 Order and Report and Recommendation is **ADOPTED** in its entirety for the reasons set forth therein and as set forth in this Memorandum-Decision and Order; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal taken from this Memorandum-Decision and Order would not be taken in good faith; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve the parties with a copy of this Memorandum-Decision and Order in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: February 15, 2012
       Albany, New York

Mae A. D'Agostino
U.S. District Judge